[No. 16519. Department One. June 22, 1921.]

# W. L. BEYER, *Appellant*, v. M. P. ZINDORF *et al.*, *Respondents*.[1]

HIGHWAYS (33)—CONSTRUCTION—CONTRACTS—RESERVE FUND. Under a contract between the state and a contractor for the construction of a highway pursuant to Rem. Code, §§ 5867-5878, which does not authorize the retention of a percentage of the contract price for the protection of those supplying labor and material, no trust fund is created in favor of the latter by the provisions of the contract to the effect that part of the price earned might be retained to be applied by the state at its discretion upon any claims due and unpaid, the contract further providing that, on failure of the contractor to complete the contract according to its terms, the state was authorized upon notice to take over the work and complete it, and the contractor should not be entitled to any balance of the amount payable under his contract unless such unpaid balance should exceed the expense incurred by the state in finishing the work.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered March 31, 1921, upon findings in favor of the plaintiff as against the contractor and dismissed as to the state, in an action to recover for labor and materials furnished on a state highway. Affirmed.

*Fred M. Bond*, for appellant.

*The Attorney General* and *O. R. Schumann, Assistant*, for respondents.

MACKINTOSH, J.—Plaintiff desires to recover for labor and material performed and furnished on a state highway under a contract entered into August 5, 1916, between the state highway board and the defendant, M. P. Zindorf. The contract contemplated the grading of part of the National Park highway, located in Pacific county. Under the contract, the price to be

[1] Reported in 198 Pac. 977.

paid for the work amounted to $25,550.21. The work was to be completed by August 20, 1917. On account of the failure of Zindorf to complete his work according to his contract, the state highway department took charge of the job on August 31, 1917, and completed it fifteen months thereafter, at a cost of $18,834.57. Zindorf had been paid under the contract the sum of $12,285.22, and he had also earned, but not been paid, a retained percentage of 20 per cent, amounting to $3,397.01, and upon his last monthly statement an estimated amount of $1,302.82. In other words, there was retained the sum of $4,699.83 at the time the state highway department took over the contract. The state highway department used up in completing the contract all this and several thousand dollars in addition.

The plaintiff performed labor and furnished materials to the job while it was being carried on by Zindorf, and not being paid therefor he filed his claim with the state highway department, claiming an interest in the retained percentage as a trust fund. His claim, together with other claims assigned to him, amounts to $3,581.11.

Plaintiff is seeking judgment against the state upon the theory that the retained percentage was a trust fund, which had been used by the state, which was therefore rendered liable. Plaintiff secured judgment below against Zindorf, but his action was dismissed as against the state and its officers, and from this latter portion of the judgment he has appealed.

As much of the contract as it is necessary for us to set forth is as follows:

IV.

"Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of material of the proper quality, or fail in any respect to prosecute the work with promptness and diligence,

or fail in the performance of any of the agreements herein contained, the state highway commissioner shall be at liberty, after three (3) days' written notice to the contractor, to provide any such labor and materials and deduct the cost thereof from any moneys then due or thereafter to become due to the contractor under this contract; and if the state highway commissioner shall consider that such refusal, neglect or failure is sufficient ground for such action, he may, by written notice, terminate the employment of the contractor for said work and enter upon the premises and take possession of all materials, tools, and appliances thereon, for the purpose of completing the work included under this contract, and employ, by contract or otherwise, any person or persons to finish the work, and provide the materials therefor; and in case of such discontinuance of the employment of the contractor, he shall not be entitled to receive any further balance of the amount to be paid under this contract until the work shall be fully finished, at which time, if the unpaid balance of the amount to be paid under this contract, shall exceed the expense incurred by the state highway commissioner in finishing the work, such excess shall be paid by the state to the contractor, but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the state treasurer.''

## VII.

"Partial payments under this contract, not to exceed eighty per cent (80%) of the work done, shall be made at the request of the contractor once each month, said payments to be made upon estimates of the state highway commissioner. In case of lump sum price, a schedule of prices to be used as basis of partial payments, shall be based upon the prices in the preliminary estimate, which prices shall be increased or reduced in the same ratio that the lump sum price bears to the preliminary estimate. Final payments for said work shall be made within thirty (30) days of the final completion and acceptance of the entire work by the state highway commissioner, Provided, That the state highway commissioner may require the contractor to show to the satisfaction of said commissioner before

the making of such final payment, that all just debts due all laborers, mechanics, material men, and persons, who have supplied such contractor, or sub-contractor, with materials or goods of any kind for this work, have been paid, and, Provided, further, That if prior to any payment being made the state highway commissioner receives notice from any person or persons that any laborers, mechanics or materialmen, or other persons who have furnished or supplied said contractor, or any sub-contractor, with any labor, service, material, goods or provisions of any kind, in connection with the construction of said portion of the National Park Highway that may be ordered for said portion of the National Park Highway have claims against said contractor, or any sub-contractor, for any such service or things, and for which any such laborers, mechanics, materialmen, or other persons, would be entitled to a lien under the laws of this state were said highway not a public highway, or proper claim against the bond in such cases required by law, the state highway commissioner may, in his discretion, retain out of the payments then due or to become due said contractor, an amount, in addition to the twenty per cent. (20%) above provided to be retained until the final completion of said work, sufficient to cover all such claim or claims of which notice shall have been so given, until such claim or claims shall have been fully satisfied and paid and receipts in full for the same shall have been furnished by said contractor or to the state highway commissioner, and the said contractor hereby expressly agrees to pay all such claims.''

We have already stated the theory upon which the appellant seeks recovery, and it thus becomes necessary to examine the contract to determine whether by its terms it creates such a trust fund as claimed.

This court has held that where the contract reserves a balance for the protection of materialmen and laborers, that such reserve balance is a trust fund, and the municipality making the contract is under obligation to hold it as such for their benefit. But this rule,

as we take it, has been applied only in those cases where the contract unmistakably provides for such a fund.

The case of *State ex rel. Bartelt v. Liebes,* 19 Wash. 589, 54 Pac. 26, had to do with a contract which provided that no payment was to be made to the contractor until the work was completed and "all labor paid thereon." The assignee of the contractor brought suit against the city to compel the delivery of bonds to the contractor under the contract. Certain unpaid laborers and materialmen intervened, and the court held that the contract was valid, and that by its terms a trust fund was created in favor of such unpaid laborers and materialmen.

The court, in *First National Bank v. Seattle,* 71 Wash. 122, 127 Pac. 837, followed the *Liebes* case, *supra,* and held that a contract which expressly provided for the retention by the city of thirty per cent of the contract price to secure the payment of laborers and materialmen created a trust in their behalf; the contract, in that case, expressly binding the city to withhold the designated percentage.

In *Maryland Casualty Co. v. Washington Nat. Bank,* 92 Wash. 497, 159 Pac. 689, the court had before it a contract providing that the contractor might receive current payments of eighty per cent, but that twenty per cent should not be paid until after the work had been accepted and the municipality satisfied that the laborers and materialmen had been paid. The court held that such a contract was for the protection of the laborers and materialmen, following the *Liebes* and *First National Bank* cases, *supra.*

The contract in the case of *Denham v. Pioneer Sand & Gravel Co.,* 104 Wash. 357, 176 Pac. 333, provided "for the withholding by the county of twenty per cent of the contract price for the satisfaction of unpaid

labor and material claims." We there re-announced the doctrine that the reserved percentage was a trust fund for the benefit of laborers and materialmen.

In all of these cases the contracts expressly or necessarily impliedly bound the municipalities to hold out a certain percentage for the benefit of laborers and materialmen.

In *Northwestern Nat. Bank v. Guardian Casualty & Guaranty Co.*, 93 Wash. 635, 161 Pac. 473, the contract provided that, "The said contractor agrees to pay the wages of all persons . . . and for all materials purchased therefor, and the said city of Bellingham *may* withhold any and all payments under this contract until satisfied that such wages, assistance and materials have been fully paid for." The court said in regard to that contract:

"It did not contain the usual provision for the payment of a certain percentage of the estimated value of work as it progressed, and for a retention of a certain percentage by the city until the work was completed to meet any unpaid labor and material claims, nor did it contain any provision for the holding up of any sum by the city, except that above quoted."

The decision of the court was that in those contracts which provided for the retention of a certain balance for the benefit of laborers and materialmen, such retained percentage was a trust fund, but:

"It is only where there is a clear and express reservation in the contract of a fund to be held up for the benefit of laborers and materialmen that there is any fund the contractor may not effectually assign by an assignment made prior to his default and notice of such default to the board or, as in this case, to the city, and that it is only as to such reserve fund that the labor and material claims have any priority over such assignments, hence only as to such reserve fund that there is any right of subrogation in favor of the bondsmen . . .

"In the case before us . . . The contract itself contained no provision for an absolute reserve of any percentage as security for labor and material claims. It contained nothing but a provision permitting the city to withhold payment until satisfied that all labor and material claims had been paid."

Both appellant and respondents agree that the contract alone covers this case and it is not to be considered in regard to any statute, for the reason that Rem. Code, §§ 5867-5878, under which the state highway board was contracting for the construction of this road, contains no provision in regard to the retention of any trust fund.

An examination of the contract shows that there is no express provision for the creation of a trust fund, nor is there any provision which has that necessarily implied result. Under paragraph seven the contractor, as a matter of right, received each month payments not in excess of eighty per cent of the work done, the unpaid balance to be paid thirty days after final completion and acceptance of the entire work. It is provided that before final payment all debts shall have been paid, and that the state highway commissioner may retain, in addition to the twenty per cent, enough to cover claims that may be filed until such time as the contractor should show receipts for all such payments. Although the contract provides that the contractor shall receive only eighty per cent per month and the balance 30 days after the completion of the work, with a provision allowing the state to require the contractor to show that he had paid all his bills, the measure of the appellant's rights is whether this twenty per cent has been placed beyond the control of the contractor, and it seems to us, upon an examination of the contract, that it was no more placed beyond his control than was the reserve in the *Northwestern*

*National Bank* case, *supra.* In that case the contract provided that the municipality might withhold "any and all payments under this contract until satisfied that such wages, assistance and materials have been fully paid for." If that was not an absolute reserve, the provision in this case that the state highway commissioner "may require the contractor to show to the satisfaction of said commissioner before making such final payments that all just debts . . . have been paid," does not create an absolute reserve. Although the contract provides the state highway commissioner "may" withhold twenty per cent of the contract price, and, as a matter of fact, he did. so withhold such amount, the fact that the withholding may have been optional only made it impossible for the contractor to collect the entire price before final acceptance, and required him to satisfy the commissioner that he had paid all the debts, if the commissioner so chose, yet the contractor was entitled to the 20 per cent within 30 days after final completion, if the commissioner did not require him to show that he had paid all claims, the contract being that the commissioner "may" so require such payment to be shown.

In *Dowling v. Seattle,* 22 Wash. 592, 61 Pac. 709, where the contract provided that "the city of Seattle may withhold any and all payments under this contract until satisfied that such wages, assistance and materials have been fully paid for," it was held:

"It is true that the city, by virtue of a provision of the agreement which we have hereinbefore noted, *might* have withheld all payments from the contractor until it was satisfied that all just claims for labor and materials had been fully paid; but it does not follow from that fact, as contended by the learned counsel for appellants, that it was obliged to do so, and that, having done otherwise, it should now be held to be a trustee of the laborers and material men, and, as such,

liable to them directly for the amount of the fund assigned and of the bonds delivered to the contractor.''

In the *Northwestern National Bank* case, *supra,* this court, in referring to the *Dowling* case, *supra,* held it to be still good law, and that the provision just quoted meant nothing but permission granted to the city to withhold payments.

Taking the contract as a whole, and giving it the interpretation which would best effect the intention of the parties (*Dyer v. Middle Kittitas Irr. Dist.,* 25 Wash. 80, 64 Pac. 1009, and *Norton v. State,* 104 Wash. 248, 176 Pac. 347), it will be seen that the contract contemplated the use by the state highway commissioner of all amounts earned by the contractor and not yet paid to him in carrying out the contract, in the event the state highway commissioner was forced to complete the work. This was what was done in this case. To say that this was unauthorized would be to read out of the contract that section which provides for this very contingency. Section seven was inserted for the purpose of aiding the commissioner in securing the performance of the contract, but does not take the title of the twenty per cent from the contractor. *Columbia Brick Co. v. District of Columbia,* 1 App. D. C. 351; *Jones v. Savage,* 24 Misc. Rep. 158, 53 N. Y. Supp. 308; *Epeneter v. Montgomery County,* 98 Iowa 159, 67 N. W. 93. See, also, *State ex rel. Fairhaven v. Cheetham,* 17 Wash. 131, 49 Pac. 227.

We find no merit in the other contentions made by the appellant, and the judgment is therefore affirmed.

PARKER, C. J., BRIDGES, FULLERTON, and HOLCOMB, JJ., concur.